[No. 775.   Decided December 30, 1892.]

THOMAS B. CHILDS, *Appellant*, v. THE CITY OF ANACORTES, *Respondent*.

MUNICIPAL CORPORATIONS — INDEBTEDNESS — CONSTITUTIONAL
LAW — VALUATION OF PROPERTY.

The constitutional provision prohibiting cities from incurring indebtedness in excess of one and one-half per cent. of the valuation of the taxable property therein is a limitation, and not a grant, of the power to incur indebtedness, and has no effect upon cities until the data which gives life to such limitation has been first ascertained.

Where a city has been recently incorporated, and until a regular assessment for city purposes can be made, such city may ascertain the total valuation of the property within the city limits, as shown

by the last assessment roll of the county, and declare the same to be the valuation of the city property for the purpose of establishing a basis for the incurring of indebtedness.

Although warrants issued by a city may make its indebtedness in excess of the lawful limit, according to the valuation at the time when issued, yet, if such indebtedness was legal according to the valuation for the year in which it was incurred, the warrants are valid.

*Appeal from Superior Court, Skagit County.*

*B. B. Fowle,* for appellant.

*Wells & Joiner,* for respondent.

The opinion of the court was delivered by

HOYT, J. — On the 15th day of May, 1891, the city of Anacortes was duly incorporated under the general laws of the state and became a city of the third class. On July 1st following, the city council, for the purpose of ascertaining the amount of taxable property within the corporate limits of said city, caused W. G. Beard, the duly elected and qualified city assessor of said city, and also the duly appointed and qualified deputy county assessor, to return to the council the total amount of taxable property within the corporate limits of said city, according to the valuation of such property on the assessment roll for the county for the then current year. Thereafter said Beard certified to the council the total amount of said taxable property so ascertained by him to be $5,120,000. On the 6th day of July the city council, by ordinance duly passed and published, accepted and approved of the valuation so returned and ascertained, and declared that the true value of all the property within the limits of said city, for city purposes, was the said sum of $5,120,000.

Between the date of the incorporation of the city and the date when such valuation was ascertained and declared, the city incurred indebtedness to the amount of $84.50, and between said last date and the 31st day of May, 1892, it

incurred a further indebtedness, and issued warrants upon its treasurer therefor, in the sum of $59,383.34. Between said dates it also incurred a further indebtedness of $7,-707.65, for which warrants were duly issued after the said 31st day of May, 1892. On said May 31, 1892, the regular assessment roll for said city for that year was completed and became effective. From such assessment roll it appeared that the total valuation of the taxable property of the city was $2,961,816.

The plaintiff brought this action to enjoin the city from paying any of said warrants, and the question presented to us for consideration is as to whether or not the warrants issued under the circumstances above set out were valid obligations as against the city.

It is contended upon the part of the plaintiff that until there had been an ascertainment of the value of the taxable property within the city, as shown by the regular assessment roll for city purposes, the city could incur no indebtedness; that the constitution prohibited the city from incurring an indebtedness in excess of one and one-half per cent. of the valuation of the taxable property so ascertained, and that until such valuation was made to appear, there was nothing to show what indebtedness the city 'could legally incur, and that, for that reason, it could incur none at all. It is further contended in his behalf that the attempted ascertainment of the valuation of the taxable property in 1891, as above stated, was entirely ineffectual for the purpose of establishing the data upon which the one and one-half per cent. of indebtedness could be estimated.

We are unable to agree with either of these contentions. In our opinion, the provision of the constitution as to the amount of indebtedness which may be legally incurred by a city is a limitation upon the powers thereof, and not a grant of the right to incur indebtedness. Without this provision of the constitution, it would have been competent

for the city, acting under authority from the legislature, to have incurred any amount of indebtedness. This being so, it follows that the provision of the constitution is a limitation, and not a grant. If, without the provision of the constitution, the city could incur, not only an indebtedness to the amount therein named, but also to any further amount within the limitations of its charter, it cannot with any degree of consistency be claimed that it must look to such provision as the source of its power to incur indebtedness. Such provision being then a simple limitation, it could have no effect upon the city until the data, which gave life to such limitation, had been first ascertained. It will be presumed, in the absence of a showing to the contrary, that the city in incurring any indebtedness acted properly, and the fact that it exceeded the limitation authorized by the constitution could never be made to appear until the valuation upon which the percentage named in such provision is to be estimated had been established as required by law.

The conclusion to which we have come as to this question would make it unnecessary for us to discuss the other question to determine the validity of the great bulk of the warrants in question, but since the total amount of such indebtedness exceeds one and one-half per cent. of the total valuation as shown by the assessment roll for city purposes, it would follow that a portion of the same would be void unless the valuation of the property on July 6, 1891, is held to be effectual as a proper basis upon which to estimate the percentage to determine whether or not the limitation of the constitution has been exceeded. Under the constitutional provision, the assessment roll of the county is made the basis for ascertaining the valuation of taxable property for the purposes of the limitation therein established. To this general provision is added a proviso by which the assessment roll for city purposes is made such basis in cities. At the time the property was valued and

placed upon the assessment roll for the county for the year 1891, the property afterwards included in the city of Anacortes was properly valued by the county officers and placed upon the county assessment roll.    This being so, and the statute having contemplated the valuation for such purpose only once in each year, we are of the opinion that the basis thus established was the proper one upon which to estimate the percentage to show the limit of indebtedness during the year ending with the time when the regular assessment for the succeeding year should be completed and become effective.    That this would be the fact if the property remained outside of the limits of the city there can be no question, and in our opinion the fact that by the incorporation of the city it is segregated from the other property of the county, could not change the rule.    If such is not the fact, then it would follow from what we have heretofore said that until the date of the first regular assessment for city purposes there would be no data to aid the officers of the. city in determining as to whether or not any indebtedness which they were about to incur was in excess of the constitutional limitation.    Such officers would be, therefore, during what might be almost an entire year, working in the dark, and when the regular assessment for city purposes became effective it might be found that indebtedness which had been incurred in the best of faith, supposing it to be within the amount authorized by the constitutional limitation, was in excess thereof and for that reason entirely void.

Under the facts above stated, the city council proceeded in what seems to us to have been a proper manner to ascertain the total valuation of the property within the city limits, as shown by the last assessment roll of the county, and duly ascertained and declared the same.    And until a regular assessment for city purposes had been made, we think that the valuation thus established must be held to

be a proper valuation of the property of said city for the purposes of estimating the limit of indebtedness under the constitutional provision.

What we have said above shows that, in our opinion, all of the warrants issued prior to the 31st day of May, 1892, were valid and binding obligations against the city. It is claimed, however, that as to the $7,707.65, issued after said 31st day of May, 1892, the basis for the limitation had, at the date of their issue, been duly established at the sum of $2,961,816; and that, as the amount of outstanding warrants at the date these were issued was in excess of one and one-half per cent. of said last named sum, these warrants came within the constitutional provision, and being issued in excess of the percentage therein established, were void. This would doubtless be true if the indebtedness upon which these warrants were issued had been incurred subsequent to said May 31st, but such was not the fact. The liability was incurred when the total amount of the indebtedness, including the amount of such liability, was within the one and one-half per cent. named in the constitution. Such being the fact, the indebtedness when incurred was valid and binding, and warrants to evidence the same could properly be issued, even although at the time of such issue they constituted a part of an excess as estimated under the valuation then effective.

The decree of the superior court must be affirmed.

ANDERS, C. J., and SCOTT, DUNBAR and STILES, JJ., concur.